IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HENRY NAHU VILLALOBOS FLORES,    )
                                 )
            Petitioner,          )
                                 )
      v.                         )      1:26-cv-341 (LMB/IDD)
                                 )
TODD M. LYONS, et al.,           )
                                 )
            Respondents.         )

ORDER

Petitioner Henry Nahu Villalobos Flores ("Villalobos Flores"), a native of Honduras, has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act (Count I), the bond regulations codified at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II), and his due process rights (Count III).

Villalobos Flores is currently detained at the Farmville Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the Farmville Detention Center. He has also sued Todd M. Lyons, the Acting Director of ICE; Joseph Simon, the Director of the Washington Field Office of ICE's Enforcement and Removal Operations division; Kristi Noem, the former DHS Secretary; the Department of Homeland Security; and Pamela Bondi, the Attorney General (collectively, "the federal respondents"). For the reasons discussed in this Order, Villalobos Flores's Petition, [Dkt. No. 1], will be denied.

I.

According to the Declaration of Charles M. Byrne, ICE Assistant Field Office Director, Villalobos Flores first entered the United States on or about September 13, 2000.[1] [Dkt. No. 4-1] at ¶ 6. Border patrol agents encountered him shortly thereafter in Laredo, Texas, and served him with a Notice to Appear ("NTA"), which charged him with being inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i). Id. On August 17, 2001, after Villalobos Flores failed to appear at his immigration hearing in San Antonio, Texas, the Immigration Judge sustained the charge of removability in the September 2000 NTA and ordered petitioner removed to Honduras in absentia. Id. at ¶ 7; see also id. at 5-6 (Immigration Judge's Memorandum and Order, dated September 6, 2001). On July 8, 2007, Villalobos Flores voluntarily departed the United States pursuant to the Immigration Judge's removal order. Id. at ¶ 8.

On March 4, 2019, border patrol agents again encountered Villalobos Flores near Rio Grande Valley, Texas. Id. at ¶ 9. Petitioner was subsequently issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, and was released pursuant to an order of supervision. Id. On February 3, 2026, ICE agents encountered Villalobos Flores in Chesapeake, Virginia, and took him into custody at the Farmville Detention Center. Id. at ¶ 10. Petitioner was issued a new Form I-871, Notice of Intent/Decision to Reinstate Prior Removal Order. Id.; see also id. at 7. On February 6, 2026, DHS issued a Notice of Revocation of Release to Villalobos Flores, revoking the order of supervision previously issued to him in March 2019. Id. at ¶ 11; see also id. at 8-10. The Notice of Revocation of Release stated that petitioner's "release has been revoked" because:

---

[1] Villalobos Flores's Petition only alleges that he has resided in the United States "since the year 2019" and fails to include any allegations related to his prior immigration history. See [Dkt. No. 1] at ¶ 45.

2

> You violated a condition of your release. Specifically, you failed to report for your scheduled appointment on January 5, 2025 at 09:00.

Id. at 8.

That same day, DHS also provided Villalobos Flores with an informal interview to afford him the opportunity to respond to the reasons for the revocation of his order of supervision. Id. at ¶ 12; see also id. at 11. ICE's record of the informal interview states, in relevant part:

> On 02/06/2026, [ICE] conducted an initial informal interview of the detainee . . . in order to afford the alien an opportunity to respond to the reasons for revocation of his or her order of supervision stated in the notification letter. At the interview, the alien made the following oral response regarding the reasons for revocation:
>
> The detainee did not provide a written statement. The detainee did not provide any documents.

Id.

Villalobos Flores filed his Petition on February 4, 2026. [Dkt. No. 1]. The Court subsequently entered an Order requiring that petitioner not be "removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to show cause why the Petition should not be granted. [Dkt. No. 2]. The federal respondents have filed an opposition. [Dkt. No. 4].

II.

Under 8 U.S.C. § 1231, noncitizens like Villalobos Flores who have received a final order of removal shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(2)). "During the removal period, detention is mandatory." Id. (citing 8 U.S.C. § 1231(a)(2)). After the ninety-day deadline for removal, DHS may release a noncitizen subject to terms of supervision. 8 U.S.C. §§ 1231(a)(3), (6). DHS may also continue to detain a noncitizen in certain circumstances, including where the noncitizen is inadmissible or DHS

3

determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); see also Castaneda v. Perry, 95 F.4th 750, 755 (4th Cir. 2024). If DHS releases an individual, it may subsequently re-detain an individual under certain circumstances, including where necessary to enforce a removal order or where an individual has violated any of the conditions of his release. See 8 C.F.R. §§ 241.4(l); 241.13(i)(2). Section 1231 does not impose an explicit limit on how long an individual may be detained, either following the removal period or after the revocation of an order of supervision; however, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." Zadvydas v. Davis, 533 U.S. 678, 682 (2001). Zadvydas construed § 1231 to "contain an implicit limit on terms of detention," Dong Lu v. Noem, et al., No. 1:25-cv-390-MSN-IDD, slip op. at 4, "the application of which is subject to federal-court review[,]" Zadvydas, 533 U.S. at 682. Under Zadvydas, "a noncitizen's detention pursuant to § 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" Dong Lu, No. 1:25-cv-390-MSN-IDD, slip op. at 4 (quoting Zadvydas, 533 U.S. at 701). "If the [noncitizen] makes these prima facie showings, the burden shifts to the government to provide evidence in rebuttal." Menghua Wan v. Crawford, 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (citing Zadvydas, 533 U.S. at 701).

III.

In their Opposition, the federal respondents argue that Villalobos Flores's detention is lawful because he is under a final order of removal; his detention, which has lasted for around a month, remains presumptively reasonable under Zadvydas; and he has failed to demonstrate that

"there is no significant likelihood of removal in the reasonably foreseeable future."[2] [Dkt. No. 4] at 5-6. In response, Villalobos Flores "does not dispute that § 1231 applies[,]" but instead argues that the federal respondents violated his due process rights under the Fifth Amendment when they "revoke[d] a previously granted release and re-detain[ed] Petitioner without meaningful individualized process." [Dkt. No. 5] at 1. The thrust of Villalobos Flores's argument is that the federal respondents failed to follow their own regulations in revoking his supervision. Id. at 3. Upon review, the Court finds that petitioner's procedural due process arguments are unsupported by the available record.

> DHS regulations provide that any individual:
>
> who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole. The [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> 8 C.F.R. § 241.4(l)(1).[3]

---

[2] The federal respondents also correctly contend that "the entire premise of [Villalobos Flores's] Petition is erroneous," as the Petition argues that ICE detained him pursuant to § 1225(b)(2), not § 1231(a)(2). [Dkt. No. 4] at 4.

[3] Villalobos Flores's Notice of Revocation of Release asserts that his release was revoked pursuant to 8 C.F.R. §§ 241.4(l) and 241.13(i). [Dkt. No. 4-1] at 8-10; see also [Dkt. No. 4-1] at 11 (ICE's documentation of petitioner's informal interview upon revocation of Order of Supervision under 8 C.F.R. §§ 241.4(l), 241.13(i)). "The procedures required to revoke each of these forms of release are different." Phommachak v. Wesling, No. CV 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026). Because petitioner agrees that the appropriate regulation to apply here is 8 C.F.R. § 241.4(l), the Court will analyze ICE's procedures under this provision. See [Dkt. No. 5] at 3 ("Revocation of an Order of Supervision is governed by 8 C.F.R. § 241.4(l), which requires that the noncitizen has violated conditions of release or that changed circumstances warrant detention.").

Unlike other petitioners that have come before this Court and have successfully argued that they received inadequate notice of the basis for revocation of their supervision,[4] here the record establishes that DHS has followed its own regulations by providing Villalobos Flores with a sufficient explanation as to why he has been re-detained. As the federal respondents assert, petitioner's Notice of Revocation of Release clearly stated that his release had been revoked because he violated certain conditions of his release, specifically: he failed to report for a previously scheduled appointment while on supervision on January 5, 2025, at 09:00. [Dkt. No. 4] at 3; see also [Dkt. No. 4-1] at 8. The Notice of Revocation of Release further advised Villalobos Flores that he would be "given an informal interview at which he would be given the opportunity to respond to the reasons for the revocation, and to submit evidence or information for consideration." [Dkt. No. 4] at 3; see also [Dkt. No. 4-1] at 9. Petitioner refused to sign the Notice of Revocation of Release, and during the informal interview on March 6, 2026, did not provide either an oral or written statement or any documents explaining his failure to report to a scheduled appointment. [Dkt. No. 4] at 3.

Villalobos Flores's arguments to the contrary are unavailing. First, he argues that the Notice of Revocation of Release provided inadequate notice because it contained "[n]o factual findings" regarding "analysis of flight risk or danger" and "[n]o explanation of changed circumstances[,]" and the accompanying informal interview "reflects no written statement, no documents, and no recorded findings, [Dkt. No. 5] at 2; however, this is not required under 8 C.F.R. § 241.4(l)(1). Instead, "[u]nder DHS's regulation, 'in order to revoke conditional release,

---

[4] See, e.g., Gatshetshiladze v. Lyons, et al., No. 1:25-cv-2405-LMB-IDD, slip op. at 8-10, (finding that ICE's fifteen-day delay in issuing petitioner his Notice of Revocation of Release, along with the failure to identify "changed circumstances" to justify petitioner's revocation of supervision, constituted a violation of 8 C.F.R. § 241.4(1)).

the Government must provide adequate notice' and give the noncitizen 'an opportunity to respond to the reasons' offered for the revocation." <u>Perez-Escobar v. Moniz</u>, 792 F.Supp. 3d 224, 226 (D. Mass. 2025) (quoting <u>Noem v. Abrego Garcia</u>, 604 U.S. ——, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J.)). As explained above, the Notice of Revocation of Release explicitly informed Villalobos Flores of the alleged basis for his detention: his failure to appear for a scheduled appointment. <u>See</u> [Dkt. No. 4-1] at 8. Petitioner's arguments are further undermined by his failure to contest the basis for revocation of his release pursuant to 8 C.F.R. § 241.4(l)(1), when he did not provide either an oral or written statement and did not provide any documents explaining why he missed the scheduled appointment.[5] <u>See id.</u> at 11. In his Reply to Respondents' Opposition, Villalobos Flores merely asserts that a "missed reporting appointment—if established—does not automatically justify re-detention after years of compliance without individualized assessment[,]" [Dkt. No. 5] at 4; however, petitioner again does not explain why he did not appear at his scheduled appointment on January 5, 2025, and does not provide any argument as to why his failure to report to a scheduled appointment should not constitute a violation of his supervised release, <u>see generally</u>, <u>id.</u> On this record, the Court finds that ICE did not violate its own procedures in its revocation of Villalobos Flores's release. For all these reasons, it is hereby

ORDERED that Villalobos Flores's Petition, [Dkt. No. 1], be and is DENIED; and it is further

---

[5] The informal interview appears to have been conducted in person at the Farmville Detention Center. <u>See</u> [Dkt. No. 4-1] at 11. There are no allegations regarding whether petitioner's counsel was notified about the informal interview, or whether counsel was present at the information interview; however, petitioner does not allege to the contrary. Furthermore, although it is unclear whether a translator was present at the informal interview, petitioner's counsel does not argue that a translator was needed, but was not provided. <u>See generally</u>, [Dkt. No. 5].

ORDERED that the Court's February 4, 2026, Order, which prohibits the federal respondents from removing or transferring petitioner from this district for any reason without this Court's permission, [Dkt. No. 2], be and is VACATED.

The Clerk is directed to enter judgment in the federal respondents' favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 9th day of March, 2026.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

8